IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

FRANCISCO XAVIER VARGAS,

               Plaintiff,                             No. 03:12-cv-00768-HZ

     v.

CAROLYN W. COLVIN, Acting                    OPINION & ORDER
Commissioner of Social Security,

               Defendant.


Richard A. Sly
209 S.W. Oak Street, Suite 102
Portland, Oregon 97204

Linda S. Ziskin
P.O. Box 753833
Las Vegas, Nevada 89136

      Attorneys for Plaintiff

S. Amanda Marshall
UNITED STATES ATTORNEY
District of Oregon


1 - OPINION & ORDER

Adrian L. Brown
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97201-2902

Benjamin J. Groebner
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

        Attorneys for Defendant

HERNANDEZ, District Judge:

        Plaintiff Francisco Vargas brings this action seeking judicial review of the

Commissioner's final decision to deny disability insurance benefits (DIB) and supplemental

security income (SSI).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated

by 42 U.S.C. § 1383(c)(3)).  I reverse the Commissioner's decision and remand for additional

proceedings.

## PROCEDURAL BACKGROUND

        Plaintiff applied for DIB and SSI on July 1, 2009, alleging an onset date of March 20,

2009.  Tr. 123-27.  His application was denied initially and on reconsideration.  Tr. 61-70, 80-86.

        On December 9, 2010, plaintiff appeared, with counsel, for a hearing before an

Administrative Law Judge (ALJ).  Tr. 33-56.  On December 16, 2010, the ALJ found plaintiff

not disabled.  Tr. 16-32.  The Appeals Council denied review.  Tr. 1-4.

## FACTUAL BACKGROUND

        Plaintiff alleges disability based on scoliosis, chronic back pain, goldenhar syndrome, and

anxiety.  Tr. 141.  At the time of the hearing, he was thirty-five years old.  Tr. 126 (showing date

2 - OPINION & ORDER

of birth).  He is a high school graduate and has past relevant work experience as an intake

analyst, dispatcher, customer service representative, and control room operator.  Tr. 23, 27.

Because the parties are familiar with the medical and other evidence of record, I refer to any

additional relevant facts necessary to my decision in the discussion section below.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which . . . has lasted or can be

expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§

423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure.  See Valentine v.

Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step

procedure to determine disability).   The claimant bears the ultimate burden of proving disability.

Id.

In the first step, the Commissioner determines whether a claimant is engaged in

"substantial gainful activity."  If so, the claimant is not disabled.  Bowen v. Yuckert, 482 U.S.

137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b).  In step two, the Commissioner

determines whether the claimant has a "medically severe impairment or combination of

impairments."  Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  If not, the

claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in

combination, meet or equal "one of a number of listed impairments that the [Commissioner]

acknowledges are so severe as to preclude substantial gainful activity."  Yuckert, 482 U.S. at

141; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed

disabled; if not, the Commissioner proceeds to step four.  Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any

impairment(s), has the residual functional capacity (RFC) to perform "past relevant work."  20

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that plaintiff has not engaged in substantial gainful

activity since his alleged onset date through his date of last insured.  Tr. 21.  Next, at steps two

and three, the ALJ determined that plaintiff has severe impairments of discogenic and

degenerative disease of the back and spine, but that the impairments do not meet or equal, either

singly or in combination, a listed impairment.  Tr.  22.

At step four, the ALJ concluded that plaintiff has the residual functional capacity (RFC)

to perform the full range of sedentary work as defined in 29 C.F.R. §§ 404.1567(a), 416.967(a).

With this RFC, the ALJ determined that plaintiff is unable to perform any of his past relevant

work.  Tr. 27.  However, at step five, the ALJ applied the Medical-Vocational Guidelines in 20

C.F.R. Part 505, Subpart P, Appendix 2 and determined that plaintiff is not disabled.

/ / /

4 - OPINION & ORDER

STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (internal quotation omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. Id.; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591 (internal quotation and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation omitted).

DISCUSSION

Plaintiff contends that the ALJ erred at step two by failing to find that plaintiff's anxiety was a severe impairment, and further erred at step four in his consideration of two medical opinions.

I. Anxiety

At step two, the ALJ found that plaintiff's anxiety was not a medically determinable impairment because there was no objective evidence such as a diagnosis in support of the alleged anxiety impairment. Tr. 22. Plaintiff argues that the evidence in the record was sufficient to trigger the ALJ's responsibility to follow 20 C.F.R. § 404.1520a which requires the ALJ to

5 - OPINION & ORDER

specify the symptoms, signs, and laboratory findings that substantiate the presence of a medically determinable mental impairment and then rate the degree of functional limitation resulting from the impairment.  In support, plaintiff points to April 2010 chart notes from Oregon Health & Science University's Richmond Clinic, his testimony at the hearing, and a September 2010 diagnosis of generalized anxiety disorder from Dr. Debardelaben, Ph.D., an Oregon Health & Science University psychologist.  Tr. 49-50, 288, 326-35.

    At the beginning of the hearing, plaintiff's counsel told the ALJ that plaintiff was attempting to obtain records from Dr. Debardelaben.  Tr. 35.  The ALJ acknowledged that the record could be left open, but expressed concern that the records, which were fairly recent, would reveal only a new impairment which may not have lasted more than twelve months.  Tr. 36.  The ALJ then indicated that he would "see what happens here today.  Okay?"  Id.  Unfortunately, neither the ALJ nor plaintiff's counsel revisited the issue of Dr. Debardelaben's records at the conclusion of the hearing.

    Nonetheless, plaintiff's counsel submitted the records on December 16, 2010, only one week after the hearing.  However, as is apparent from the List of Exhibits appended to the ALJ's December 16, 2010 decision, the records arrived too late for the ALJ's consideration.  Tr. 32.

    The Appeals Council, however, did consider the records and made them part of the Administrative Record, designating them as Exhibits 12F and 13F.  Tr. 4.  It then explained that even considering these exhibits, it found no basis for changing the ALJ's decision.  Tr. 1.

    When the Appeals Council, "in denying review of the ALJ's decision," considers evidence that was not presented to the ALJ, "the new evidence is part of the administrative record, which the district court must consider in determining whether the Commissioner's decision is supported

by substantial evidence." Brewes v. Commissioner, 682 F.3d 1157, 1159-60 (9th Cir. 2012). The record now includes Dr. Debardelaben's diagnosis. Therefore, the ALJ's determination at step two that plaintiff's anxiety was not a medically determinable impairment because there was no diagnosis in the record is no longer supported by substantial evidence. And, if the anxiety is a medically determinable impairment, then the ALJ must apply the 20 C.F.R. § 404.1520a analysis for determining the severity of a mental impairment.

Although plaintiff does not challenge the ALJ's negative credibility determination, the record now contains a diagnosis of anxiety. It is for the ALJ in the first instance to evaluate the other evidence of anxiety in the record, in light of this diagnosis, to determine whether plaintiff's anxiety is severe at step two. See Tr. 237, 241, 244, 246, 247, 267, 314 (noting that plaintiff took lorazepam as need for anxiety); Tr. 266 (noting "anxiety state, unspecified" in plaintiff's medical history); Tr. 314-15 (nurse practitioner notations regarding plaintiff's anxiety). Thus, the Commissioner's decision is remanded for consideration of plaintiff's diagnosis of anxiety.

II. Medical Opinions

In determining that plaintiff's RFC allowed him to perform the full range of sedentary work, the ALJ discussed the opinions of non-examining physician Dr. Martin Lahr, M.D. and plaintiff's treating Family Nurse Practitioner (FNP) Bruce Marks. Plaintiff argues that the ALJ erred in his consideration of these two practitioners' opinions.

A. Dr. Lahr

In October 2009, Dr. Lahr assessed certain functional limitations to plaintiff regarding lifting, carrying, standing, walking, sitting, pushing, and pulling. Tr. 253. There is no dispute that Dr. Lahr's opinion of these limitations was consistent with the ability to perform light work.

See 20 C.F.R. §§ 404.1567(b), 416.967(b).

Dr. Lahr also assessed plaintiff as having certain postural limitations and restricted him to only occasional climbing of ramps, stairs, ladders, ropes, or scaffolds, and only occasional balancing, kneeling, crouching, and crawling. Tr. 254. He opined that plaintiff could frequently stoop. Id. Finally, in terms of manipulative limitations, he found that plaintiff was limited in his ability to reach, including overhead, but was not limited in gross or fine manipulation or in feeling. Tr. 255.

The ALJ gave Dr. Lahr's opinion limited weight because the longitudinal evidence showed that plaintiff was actually more impaired than Dr. Lahr assessed. Tr. 25. Instead of light work, as Dr. Lahr's opinion suggested plaintiff was capable of, the ALJ concluded that plaintiff was limited to sedentary work.

Plaintiff argues that in concluding that plaintiff was actually more impaired than Dr. Lahr opined, the ALJ should have incorporated several of Dr. Lahr's other limitations such as those he assessed on climbing, balancing, kneeling, etc., into the RFC. Plaintiff argues that failure to do so was error and that a reversal for consideration of vocational expert testimony is required.

After determining that plaintiff was able to perform the full range of sedentary work, the ALJ chose to rely solely on the Medical Vocational Guidelines rather than the testimony of vocational expert (VE) "Mr. Wyford" who was present at the hearing. Tr. 33. The Guidelines may be used when a claimant has only exertional limitations or when the non-exertional limitations do not significantly erode the occupational base. Tackett v. Apfel, 180 F.3d 1094, 1101-02 (9th Cir. 1999) (further noting that the Guidelines are appropriately used only when "they *completely and accurately* represent a claimant's limitations" meaning that the "claimant

8 - OPINION & ORDER

must be able to perform the *full range* of jobs in a given category").

Plaintiff recognizes that because the ALJ limited plaintiff to a sedentary job, it is unlikely that he will perform the postural limitations assessed by Dr. Lahr regarding climbing, stooping, kneeling, crouching, and crawling, more than occasionally.  Pl.'s Op. Mem. at 5.  But, plaintiff argues, Dr. Lahr's limitation on bilateral reaching, completely ignored by the ALJ, could significantly erode the occupational base and, plaintiff argues, the only way to know how many jobs this limitation will eliminate is by eliciting the testimony of a VE.

Defendant argues that limitations in reaching eliminate a large number of occupations only when the limitation is significant and because Dr. Lahr's limitation was only to occasional overhead reaching with no limitations in reaching in any other direction, the limitation is not significant and thus, not capable of eroding the occupational base of sedentary jobs in a meaningful way.  In support, defendant relies on Social Security Ruling (SSR) 85-15, available at 1985 WL 56857, for the proposition that reaching limitations affect the number of occupations only when the limitation is significant.  But, the Ruling does not quite put it that way.

Instead, the Ruling first explains that "[s]ignificant limitations of reaching or handling . . . may eliminate a large number of occupations a person could otherwise do."  1985 WL 56857, at *7.  Then, it notes that "[v]arying degrees of limitations would have different effects, and the assistance of a [vocational specialist] may be needed to determine the effects of the limitations." Id.  Thus, while the Ruling recognizes the effect of a significant limitation, it does not provide that a lesser limitation will not significantly erode the occupational base.  Moreover, as defined in SSR 83-10, "occasionally" means "occurring from very little up to one-third of the time."  1983 WL 31251, at *5.  Thus, Dr. Lahr's assessment that plaintiff was limited to occasional overhead

9 - OPINION & ORDER

reaching could mean that plaintiff was limited in that function up to one-third of the time.

I agree with plaintiff that the ALJ's failure to discuss Dr. Lahr's limitation in reaching was error. The record does not support a conclusion that the limitation would not significantly impact the occupational base of sedentary jobs. The ALJ's failure to obtain testimony from a VE on this issue was error.

B. FNP Marks

FNP Marks was plaintiff's treating practitioner. Although a nurse practitioner, the ALJ considered FNP Marks to be a treating source. Tr. 25 (noting that FNP Marks's opinion was signed by a supervising medical doctor); see also Tr. 285 (FNP Marks's functional assessment signed by Dr. Livingston, M.D.).

In December 2009, FNP Marks assessed plaintiff with various functional limitations regarding his ability to stand, walk, lift, carry, and sit. Tr. 282-85. Additionally, FNP Marks assessed plaintiff with functional impairments in the abilities of reaching and gross manipulation. Id. In a chart note dated the same day as the functional assessment, FNP Marks explained that plaintiff had a right hypoplastic thumb on which he had surgery at age six which caused a continued weak grip due to "missing muscles" to support the thumb. Tr. 293. FNP Marks tested plaintiff's right thumb in a "thumb to tip of fingers test" and noted that plaintiff was unable to touch his thumb to the tips of digits 4 and 5. Id. Although plaintiff's congenital defect of the right thumb caused him to become left-handed, Tr. 257, plaintiff still had functional limitations with the right thumb and his grip in that hand.

The ALJ gave FNP Marks's December 2009 functional assessment opinion limited weight because first, more recent evidence from 2010 showed plaintiff to be less impaired than

FNP Marks assessed, and second, FNP Marks cited only diagnoses rather than results from objective testing or examination.  Tr. 26.  Plaintiff does not generally argue that the ALJ erred in rejecting FNP Marks's functional assessments.  Instead, plaintiff argues that the ALJ's failure to take into account the limitation in his right hand caused the ALJ to fail to consult a VE regarding whether plaintiff could perform a full range of sedentary jobs.

Defendant argues that the ALJ provided clear and convincing reasons supported by substantial evidence in the record to reject FNP Marks's opinions.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2006) (uncontradicted opinion of treating practitioner can be rejected only by clear and convincing reasons supported by substantial evidence in the record; contracted opinion of treating practitioner can be rejected only by specific and legitimate reasons supported by substantial evidence in the record).  Further, defendant argues that the ALJ does not need to discuss every piece of evidence in the record.  Accordingly, defendant contends that because the ALJ discussed FNP Marks's December 28, 2009 functional assessment and provided sufficient reasons for rejecting it, and because the ALJ was not required to separately discuss each component of that assessment, the ALJ did not err.  I disagree.

First, the reasons cited by the ALJ in support of rejecting FNP Marks's testimony are not supported by the record in regard to the thumb limitations.  The ALJ cites to 2010 evidence regarding plaintiff's ability to walk two hours every day and to hike while carrying photographic equipment, his attendance at art school classes, and that medication and physical therapy had increased his functional ability.  But, none of those activities undermine FNP Marks's assessment of plaintiff's weak grip or his inability to touch the fourth and fifth digits of his right hand with his thumb.  Furthermore, the ALJ's criticism of FNP Marks's opinion as lacking any testing or

11 - OPINION & ORDER

examination is not supported by the record regarding plaintiff's right thumb because the December 28, 2009 chart note indicates FNP Marks examined the thumb and hand and tested plaintiff's ability to touch his digits with his thumb.

Second, the ALJ's failure to consider FNP Marks's assessment of plaintiff's right thumb compounds the error the ALJ made regarding Dr. Lahr's limitation on reaching. The reaching impairment combined with the right hand grip/strength/manipulation impairment could erode the base of sedentary occupations to a significant extent. Without VE testimony on this issue, the record lacks substantial evidence that plaintiff can perform a full range of sedentary jobs.

CONCLUSION

The Commissioner's decision is reversed and remanded for additional proceedings.

IT IS SO ORDERED.

Dated this ____18____ day of ____June_____, 2013

_____
Marco A. Hernandez
United States District Judge

12 - OPINION & ORDER